**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SHARON KEMP,**

                             **Plaintiff,**

                **-v-**                                            **20-CV-3-(JLS)(HKS)**

**TARGET CORPORATION,**

                             **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. John L. Sinatra, Jr., in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #5.

Plaintiff Sharon Kemp ("Plaintiff" or "Kemp") commenced this negligence action against Defendant Target Corporation ("Defendant" or "Target") in New York State Supreme Court, Erie County, on October 23, 2019.  Dkt. #1-1 at 4.  Target removed the case on the basis of diversity jurisdiction.  *See* Dkt. #1.  Kemp's claim arises from her alleged trip and fall while stepping over the curb between a parking lot and walkway on Target property.  Dkt. #1-1 at 6, ¶¶ 5-7.  Before this Court now is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. #23.  For the following reasons, it is recommended that the motion for summary judgment be denied.

## FACTUAL BACKGROUND[1]

Kemp's claim arises from an accident that allegedly occurred in the Target parking lot on 8290 Transit Road in Williamsville, New York.  Dkt. #23-21 ¶ 1.  On October 23, 2019, Kemp parked in the Target parking lot and began walking to the store entrance.  *Id*. ¶ 8; Dkt. #30-10 ¶ 3.  As Kemp stepped up from the parking lot to the raised cement walkway leading to the store entrance, she tripped on the curb.  Dkt. #23-21 ¶¶ 10, 11; Dkt. #30-10 ¶¶ 5, 6.  Kemp was looking forward when she fell, and there was nothing obstructing the sidewalk at time of the accident.  Dkt. #23-21 ¶ 13; Dkt. #30-10 ¶ 7.  The parties dispute where exactly along the curb Kemp tripped.  *See* Dkt. #23-1 ¶ 45.  This is significant because both parties, after the accident, took measurements of the curb height at different locations.  *See* Dkt. #23-1 ¶¶ 69-74.  Depending on where the measurements were taken, it appears that the curb may have a height of anywhere between 6.25 inches, Dkt. #23-21 ¶ 19, to 7.5 inches, Dkt. #30-10 ¶ 11.

---

[1] The following facts are taken from Target's Statement of Material Facts (Dkt. #23-21), Target's Attorney Declaration (Dkt. #23-1), Kemp's Statement of Material Facts (Dkt. #30-10), Kemp's Attorney Declaration (Dkt. #30), and these submissions' accompanying exhibits.  Kemp has failed to meet the requirements of Local Rule 56 by failing to respond to each specific paragraph of Target's Statement of Material Facts.  *See* Loc. R. 56.  This Court is accordingly permitted to rely on the allegations in Target's Statement of Material Facts as long as they are supported by the record.  *See FTC v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 655 (W.D.N.Y. 2017) (citing *Manolis v. Brecher*, 588 Fed. App'x. 85, 87 (2d Cir. 2015) (summary order)).  However, this Court may not rely on these allegations where they are contradicted by admissible evidence in Kemp's motion papers.  *See id*. ("This Court will deem the Plaintiffs' Statement of Facts admitted to the extent that it is supported by admissible evidence and to the extent that it is not contradicted by the admissible evidence of which this Court has notice through Defendants' motion papers.").

Kemp subsequently brought this action alleging that the curb was a hazardous condition, violated industry standards, and violated general health and safety standards. Dkt. #30-10 ¶ 10.  In support of these claims, Kemp retained an expert witness, Mr. Anthony J. Cartonia.  Dkt. #30 ¶ 7.  Cartonia submitted an expert report, dated March 4, 2022, purportedly disclosing all information required by Fed. R. Civ. P. 26 (the "Cartonia Report").  *See* Dkt. #30-9.  He also submitted an affidavit further supporting his report on September 7, 2022.  *Id*.  In response, Target retained its own expert witness, Mr. James Ruggerio.  Dkt. #23-21 ¶ 19.  Ruggerio submitted his report, dated March 31, 2022 (the "Ruggerio Report"), and supporting affidavit.  Dkt. #23-6.

Target moved for summary judgment against Kemp's claims on July 15, 2022. Dkt. #23.  Kemp submitted her opposition on September 9, 2022.  Dkt. #30.  Target replied on October 14, 2022.

## LEGAL STANDARDS[2]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while

---

[2] This negligence case was removed to federal court on the basis of diversity jurisdiction.  *See* Dkt. #1.  Accordingly, this Court applies New York state substantive law and federal procedural law.  *See Nanjing CIC Int'l Co. v. Schwartz*, 6:20-CV-07031 EAW, 2022 WL 170606, at *4 (W.D.N.Y. Jan. 19, 2022) (citing *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996)).

resolving ambiguities and drawing reasonable inferences against the moving party . . . ."
*Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).  A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

## DISCUSSION AND ANALYSIS

This Court recommends denying Target's motion for summary judgment because material disputes exist regarding several aspects of Kemp's fall and her proffered

evidence.  Target argues four grounds for summary judgment.  First, it argues that Kemp relies entirely on an expert report that fails to meet the admissibility requirements of Fed. R. Evid. 702 and Fed. R. Civ. P. 26(a), and even if admissible, fails to establish the breach of any duty owed to Kemp.  Dkt. #23-20 at 15-29.[3]  Second, it argues that Kemp has set forth no evidence indicating the height of Target's curb was a dangerous condition.  *Id*. at 12-15.  Third, it argues that it had no duty to warn or protect Kemp from the curb because the curb was an open and obvious danger.  *Id*. at 29-32.  And fourth, it argues that the curb height was not a proximate cause of her fall.  *Id*. at 8, 9; Dkt. #31 at 11-17.[4]  These arguments are addressed in turn below.

I.      **Kemp's Expert Report**

Target argues that the Cartonia Report is inadmissible, and therefore cannot be considered in opposition to Target's summary judgment motion, because Cartonia failed to disclose information relating to his report as required by Fed. R. Civ. P. 26(a).  *Id*. at 15-23.  Target also argues that the report, if admissible, still fails to demonstrate any

---

[3] All citations to the parties' respective memoranda are to the ECF page the relevant portion appears on.

[4] This Court notes that Target only briefly mentions a purported lack of causation in its initial memorandum of law to the extent that it relates to Kemp's allegedly inadequate expert report, *see* Dkt. #23-20 at 8, 9, and sets forth a separate argument in its reply memorandum of law that Kemp admitted there was no causation, *see* Dkt. #31 at 11-17. Generally, "[a] district court is free to disregard argument[s] raised for the first time in reply papers, especially on a motion for summary judgment." *Barnes v. Healthnow N.Y.*, No. 16-CV-88-JLS(Sr), 2023 U.S. Dist. LEXIS 48035, at *21-22 (W.D.N.Y. Mar. 21, 2023) (quoting *Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D.*, No. 6:14-cv-06470(MAT), 2018 WL 3305423 at *2 (W.D.N.Y. July 5, 2018). Because Kemp has not been given a fair opportunity to respond to the argument that she admitted the curb did not cause her fall, the argument should be disregarded. However, since the argument also fails on its merits, this Court nonetheless addresses its substance *infra* Section IV.

standard governing curb height or visual warnings applicable to this case.  *Id*. at 23-29.

This Court recommends finding that the Cartonia Report is admissible, and sufficiently

supports a conclusion that Target acted negligently.

### a.  Admissibility

Fed. R. Civ. P. 26(a) requires parties utilizing an expert witness to provide a

written report detailing several aspects of the expert's anticipated testimony.  Fed. R.

Civ. P. 26(a)(2)(B).  This information includes:

> (i) a complete statement of all opinions the witness will express and the
> basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored
> in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the
> witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and
> testimony in the case.

*Id*.  "If a party fails to provide information or identify a witness as required by Rule 26(a)

or (e), the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is

harmless."  Fed. R. Civ. P. 37(c)(1).  "[D]espite the mandatory language of the rule, the

Second Circuit views preclusion as discretionary."  *Amtrust N. Am., Inc. v. KF&B, Inc*.,

17-cv-5340 (LJL), 2020 WL 5578817, at *1 (S.D.N.Y. Sept. 16, 2020) (citing *Design

Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006)).  Courts may consider several

factors in exercising this discretion, including "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Caruso v. Bon Secours Charity Health Sys.*, 703 F. App'x 31, 33 (2d Cir. 2017) (internal quotations omitted).

District courts "ha[ve] a 'gatekeeping' function under [Fed. R. Evid.] 702 –[they are] charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). However, once this threshold is met, "[t]rial courts should not arrogate the jury's role in evaluating the evidence and the credibility of expert witnesses by simply choos[ing] sides in [the] battle of the experts." *In re Joint E. & S. Dist. Asbestos Litig. v. United States Mineral Prods. Co.*, 52 F.3d 1124, 1135 (2d Cir. 1995) (internal quotations omitted).

Target argues that Cartonia failed to disclose 1) the information he relied on when drafting his report, 2) the exhibits he used to support his report, and 3) the basis for his opinions regarding Kemp's fall, instead only providing general and conclusory statements. Dkt. #23-20 at 15-23. However, the Cartonia Report contains an adequate amount of information supporting his conclusions. The report expressly states, under the "Basis for Opinion" section, that Cartonia relied on his 60 years of experience in

architecture, his review of photographs of the accident scene, curb height

measurements, the architectural and construction drawings for the Target location,

deposition testimony, and other material providing information about the accident

location and the accident itself.  *See* Dkt. #30-9 at 13, 14.  The exhibits referenced in

the report are also included in Kemp's opposition papers.  *See* Dkt. #30-1—Dkt. #30-9.

Collectively, this material comparing the actual height of the curb with what Kemp

argues should have been the proper height of the curb provides an adequate basis for

Cartonia's conclusion that it was a hazardous condition.


Target's argument that the Cartonia Report contains no evidence of the curb

height at the specific point of the accident fails to establish that the report is

inadmissible.  On summary judgment, all inferences must be drawn in Kemp's favor.

*See Thomas*, 981 F. Supp. at 798.  A jury could easily infer from the building

schematics and curb measurements at other locations that the curb was likely too tall at

the location of the accident.[5]  While the absence of information at the specific location of

the accident could harm the persuasiveness of the Cartonia Report in the eyes of the

fact finder, it would be improper for this Court to "evaluate the evidence and credibility"

of the report at the summary judgment stage.  *See In re Joint E. & S. Dist. Asbestos*

*Litig*, 52 F.3d at 1135.

---

[5] As discussed in more detail *infra* Section II, there is also a dispute of fact regarding the
specific location of Kemp's fall.  Therefore, Target is also incorrect in asserting that the
Cartonia Report does not include data about the accident location, since the exact
accident location has not been established beyond reasonable dispute.

Furthermore, even if the information listed in the Cartonia Report was considered inadequate support of Cartonia's conclusions, the factors for determining whether to preclude the report do not weigh in favor of doing so.  The report is highly important to Cartonia's testimony in opposition to this summary judgment motion, and Target has not demonstrated any prejudice suffered "as a result of having to prepare to meet the new testimony."  *Caruso*, 703 F. App'x at 33.  Any prejudice it may have been able to argue is undercut by Target's failure to challenge the report before this summary judgment motion.  *See* Fed. R. Civ. P. 37(c) (allowing alternative or additional sanctions for an improperly disclosed expert report "on motion and after giving an opportunity to be heard").  If Target was truly incapable of coherently opposing the Cartonia Report due to its lack of nonconclusory content, it could have raised this issue before summary judgment.  Accordingly, the Cartonia Report meets the admissibility requirements of Rule 26.

### b.  Substance of Report

Target also argues that the Cartonia Report, even if admissible, fails to cite any applicable authority that establishes an express maximum curb height.  Dkt. #23-20 at 23-29.  Specifically, Target argues that "[s]imply reading the text" of Section 101.2 of the Uniform Building Code, Sections 101.2.7 and 301.2 of the International Property Maintenance Code, and Sections 5 and 11 of ASTM F1637 (Standard Practice for Safe Walking Surfaces), reveals no maximum curb height.  *Id*.

Target is correct in noting that these various code sections do not discuss an express maximum curb height requirement.  However, at no point does the Cartonia Report claim that they do, or rely entirely on these codes.  The Cartonia Report generally states that these codes:

> were violated due to the fact that the 2016 project planned and implemented by Target created unsafe and hazardous conditions to exist. The Target premises does not meet the minimum requirements of the Uniform Code and the design of the parking lot and curb created a hazard to life, health, and is unsafe for pedestrian traffic.  These codes are intended to provide minimum requirements to safeguard public safety, health, and general welfare through means of egress and safety to life. Target violated these codes.

Dkt. #30-9 at 17.  Nowhere does the report claim that these codes set an express maximum height for curbs.  *Id.*

A plain reading of these codes clearly shows general language regarding reasonable safety requirements to protect building occupants.  *See, e.g.*, International Property Maintenance Code (New York) § 101.3 ("This code is intended to provide minimum requirements to safeguard public safety, health and general welfare insofar as they are affected by the occupancy and maintenance of structures and premises."). The Cartonia Report concludes that the alleged curb height where Kemp fell breached these general requirements, based on an assortment of factors including Cartonia's personal architecture experience, photographs of the accident scene, curb height measurements, the architectural and construction drawings for the Target location, deposition testimony, and other material regarding this case.  *See* Dkt. #30-9 at 13, 14. Accordingly, the absence of an express curb height requirement in the noted code sections does not mean that the report is baseless as a matter of law.  Instead, Cartonia

provides an ample basis for his expert conclusion that the general safety requirements of these codes were violated.[6]

As stated above, while the absence of any express curb height requirement may be considered by the eventual fact finder, it would be improper for this Court to completely disregard the Cartonia Report at the summary judgment stage.  *See In re Joint E. & S. Dist. Asbestos Litig*, 52 F.3d at 1135.  Accordingly, summary judgment is not appropriate based on Kemp's reliance on the Cartonia Report.

## II.      Dangerous Condition

Target next argues that there is no evidence indicating the curb height was a dangerous condition.  Dkt. #23-20 at 12-15.  Similar to its previous argument, Target asserts that the Cartonia Report fails to establish an express maximum curb height of six inches, and therefore sets forth no basis for finding that the curb was a dangerous condition.  *See id*. at 12-14.  Target then points to the findings of its own expert report, rebutting the Cartonia Report's conclusions and asserting that the curb complied with a seven-inch maximum riser height for steps set out in New York Building Code § 1011.5.2.  *Id*.  For the reasons discussed above, it would be improper for this Court to

---

[6] This same reasoning applies to Cartonia's conclusion that a visual warning was necessary to warn about the curb height.  Target argues there was no visual warning mandate in the codes cited by the Cartonia Report.  *See* Dkt. #23-20 at 28, 29. However, the absence of an express provision mandating such a visual warning does not mean that the report's conclusion is baseless.  The same basis for the Cartonia Report's other conclusions supports the assertion that a visual warning was appropriate here as well.

favor one expert report over the other when both have an adequate basis for their respective conclusions.  *See In re Joint E. & S. Dist. Asbestos Litig*, 52 F.3d at 1135.

Furthermore, even if this Court could resolve the dispute over which of the various building codes prescribes the proper height maximum applicable to this case, there would still be disputes of fact as to whether the curb is a dangerous condition. First, it is not clear whether a maximum height requirement definitively establishes that any curb lower than the maximum is nonnegligent.  *See Madonna v. Am. Airlines*, 82 F.3d 59, 63 (2d Cir. 1996) (assessing an "interdepartmental memorandum," stating that "[a] seven-inch standard does not imply that a nine-inch curb is a breach of duty, or that a curb that is less than seven inches . . . is a violation of law.  The common law continues to govern whether a particular curb is too high or too shallow; in this respect, the common law is not changed by an administrative rule that sets a height standard rather than a permissible range, and that does not impose liability for non-compliance. Deviation from that standard, therefore, cannot furnish a basis for American's liability to Madonna.").  Accordingly, here, Target establishing a maximum curb height does not necessarily establish that a lower curb height is non-dangerous as a matter of law.

The parties also agree that the height of the curb varies depending on where the height measurement is being taken, *see* Dkt. #23-1 ¶¶ 69-74, and the exact location of Kemp's fall is disputed, *see id*. ¶ 45.  Therefore, even if a maximum height was established, there is a dispute as to whether the curb at the location of Kemp's fall fell

above or below this height.  For all of these reasons, this Court cannot find as a matter

of law that the curb was not a dangerous condition.


   III.    **Duty to Protect Against Open and Obvious Condition**

      Target argues that it owed no duty to protect or warn Kemp of the curb because it

was an open and obvious condition.  Dkt. #23-20 at 29-32.  In opposition, Kemp argues

that the curb's abnormal height was not obvious, and that even if it was, her failure to

notice the additional height should only be considered as comparatively negligent

conduct by the fact finder.  Dkt. #30-11 at 14-16.  Because of the alleged circumstances

surrounding Kemp's fall, this Court cannot find that the curb height was open and

obvious as a matter of law.  Even if it was, there is a dispute of fact regarding whether a

more general duty of care was owed and breached by Target.


      Under New York law, "there is no duty to protect or warn against an open and

obvious condition which, as a matter of law, is not inherently dangerous." *Capasso v.

Vill. of Goshen*, 84 A.D.3d 998, 999 (2nd Dep't 2011) (internal quotations omitted).

However, "the question of whether a condition is open and obvious is generally a jury

question, and a court should only determine that a risk was open and obvious as a

matter of law when the facts compel such a conclusion." *Borley v. United States*, 22

F.4th 75, 81 (2d Cir. 2021) (internal quotations omitted).


      As Target points out, Dkt. #23-20 at 30, 31, New York appellate courts routinely

find that falls caused by unobstructed curbs or steps, without any other factors, are

open and obvious despite the preference for allowing a fact finder to resolve this issue. *See Philips v. Paco Lafayette LLC*, 106 A.D.3d 631, 632 (1st Dep't 2013) (finding a concrete curb "about eight inches high" was "open and obvious, not inherently dangerous and readily observable by one's reasonable use of his or her senses . . . . [T]he evidence establishes that the accident was caused by plaintiff's inattentiveness."); *Bilinski v. Bank of Richmondville*, 12 A.D.3d 911, 912 (3rd Dep't 2004) ("[I]n support of its motion for summary judgment, defendant presented photographs, as well as testimony and an affidavit from its executive vice-president, establishing prima facie that the curb did not constitute a dangerous condition . . . . [T]he conclusory affidavit of plaintiff's expert, submitted in response, was insufficient to create a question of fact regarding whether the curb created any foreseeable hazard triggering a duty to remedy or to warn."); *Nasseeruddin v. Zucker*, 37 A.D.3d 675, 676 (2nd Dep't 2007) (finding that "a raised concrete platform abutting a building at the edge of a blacktop parking lot" was "not an inherently dangerous condition").

However, "'[e]ven if a hazard qualifies as "open and obvious" as a matter of law,' such a finding 'merely eliminates the property owner's duty to warn of the hazard, but does not eliminate the broader duty to maintain the premises in a reasonably safe condition.'" *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021) (quoting *Aberger v. Camp Loyaltown, Inc.*, 193 A.D.3d 195, 199 (1st Dep't 2021)). Under this broader duty, "to keep customers safe, such 'openness and obviousness,' without more, go at most to comparative negligence." *Id*.

At least one court in the Western District of New York has found that the "duty to maintain [one's] property in a reasonably safe condition" could be breached where a plaintiff trips on an uneven curb. *Fosmire v. Kohl's Dep't Stores, Inc.*, No. 07-CV-6027, 2009 WL 891798, at *3 (W.D.N.Y. Mar. 31, 2009). In *Fosmire*, the court denied a summary judgment motion where "photographs confirm[ed] that unlike a usual curb which is uniform in height, the lip of the curb separating the parking lot from the sidewalk near the store entrance was sloping gradually," and that therefore "[a] jury could find the particular sloping lip configuration used by Kohl's to guide pedestrians into its store incorporated a difficult to detect tripping hazard for the unwary customer." *Id*. Furthermore, "[w]here an alleged defect exists in an area close to the entrance of a public building or store, the defect is more likely to constitute a trap for the unwary because the pedestrian's expected attention will be focused on the store entrance and not on navigating height differentials in the pavement." *Id*. The court also noted that "[t]hese same factors preclude a determination that the alleged defect was so open, notorious and readily observable to plaintiff that summary judgment is appropriate." *Id*.

Here, Kemp does not allege that the unobstructed curb alone caused her fall. The parties dispute what the height of the curb was at the location of Kemp's fall because the curb height varies depending on where the measurement is taken. *See* Dkt. #23-1 ¶¶ 69-74. Target also admits that Kemp was "walking toward the store entrance" when she fell. *Id*. ¶ 45. A varying curb height, combined with the potential for pedestrians to be focusing on the store entrance instead of the ground, creates a reasonable dispute as to whether "the alleged defect was so open, notorious and readily

observable to plaintiff that summary judgment is appropriate," *Fosmire*, 2009 WL 891798, at *3, and whether Target breached "the broader duty to maintain the premises in a reasonably safe condition," *Borley*, 22 F.4th at 82.[7]  Accordingly, there is a reasonable dispute as to whether Target breached any duties owed to Kemp.


### IV.   Proximate Cause

Target argues that Kemp has failed to produce evidence beyond mere speculation that the height of the curb was a proximate cause of her injuries.  Dkt. #31 at 11-17.  As discussed above, Target raises this argument for the first time in its reply memorandum.  *See id*; Dkt. #23-20 at 14, 15 (only briefly mentioning causation in the context of Target's argument regarding the Cartonia Report's content).  Accordingly, it should not be considered as properly asserted grounds for summary judgment.  *Barnes*, 2023 U.S. Dist. LEXIS 48035, at *21-22.


However, this argument would also fail on its merits because Kemp has set forth nonspeculative evidence that the curb height caused her fall.  Kemp stated in her deposition that she fell because she "caught [her] foot on the top of the curb."  Dkt. #30-1 at 8 (52:13-16).  Kemp's own testimony regarding the cause of her fall is sufficient to

---

[7] Target also argues in its reply memorandum that the disputed curb height is trivial under New York law.  Dkt. #31 at 8.  However, Fosmire's discussion of the general duty to maintain safe premises included an assessment of whether the curb height was "trivial."  *See Fosmire*, 2009 WL 891798, at *3 ("I conclude that plaintiff has produced sufficient evidence to require a jury to make the ultimate determination whether the defect was so trivial as to not be actionable.").  Like the court in *Fosmire*, this Court agrees that the same factors discussed above indicate the curb height was not trivial as a matter of law.

avoid summary judgment.  *See St. Germain v. United States*, No. 3:20-cv-105 (MPS), 2022 WL 624578, at *4 (D. Conn. Mar. 3, 2022) (applying Connecticut state law, finding that where the plaintiff relied on her own testimony regarding causation, "[a] reasonable factfinder could infer from th[e] evidence that [she] tripped over the step.  While the Government points to evidence indicating that . . . 'non-step related factors' . . . may have caused the fall, this evidence simply creates a question of fact regarding the cause of the fall; it does not preclude the inference that the step was the cause.").  It is reasonable to infer, as the Court must at this stage, that Kemp tripping on the "top" of the curb was caused by the curb's allegedly abnormal height.  *Thomas*, 981 F. Supp. At 798.  Accordingly, even if Target properly raised the proximate causation issue in its initial motion papers, the argument would still fail.

**CONCLUSION**

For the foregoing reasons, it is recommended that Target's summary judgment motion (Dkt. #23) is DENIED.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
              **May 22, 2023**

                                      ___*s/ H. Kenneth Schroeder, Jr.*___
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**